## In re Virginia QUEVEDO, Debtor.

### No. 06–00152–JH13.

United States Bankruptcy Court,
S.D. California.

June 15, 2006.

Michael G. Doan, Carlsbad, CA, for Debtor.

## MEMORANDUM DECISION

LOUISE DE CARL ADLER,
Bankruptcy Judge.

### I.

### INTRODUCTION

Mission Federal Credit Union ("MFCU") is a creditor with a claim se-cured by a non-purchase money lien on Virginia Quevedo's ("Debtor") 1999 Ford Explorer. Debtor incurred this secured debt within the 1–year period preceding the petition date. MFCU objects to Debt-or's plan of reorganization ("Plan") be-cause it proposes to bifurcate and cram down MFCU's claim. The Plan proposes to pay the secured portion of MFCU's claim in full with interest. The unsecured portion will not be paid.

MFCU contends the hanging paragraph in amended § 1325(a) precludes use of § 506(a) to bifurcate its claim.[1] MFCU acknowledges it does not have a purchase money security interest in Debtor's vehi-cle. Rather, it contends the second part of the hanging paragraph protects all person-al property secured debts incurred within one year of the petition date where (as here) they are secured by collateral of value. Accordingly, MFCU contends its claim cannot be crammed down. Its claim must be treated as fully secured and paid in full with interest.

The issue is one of first impression. For the reasons more fully set forth below, the Court overrules the objection and con-firms the Plan.

### II.

### FACTUAL BACKGROUND

On or about March 11, 2005, MFCU made a loan to Debtor in the amount of $8,960 secured by a lien on her 1999 Ford Explorer. The loan was a non-purchase money loan made to pay off the prior

---

**1.** This paragraph is an unnumbered para-graph added to § 1325(a) of the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8 (2005), effec-tive in cases commenced on or after October 17, 2005. It hangs at the end of § 1325(a)(9), but it has nothing to do with subsection (a)(9). It refers back to and modifies the treatment of certain "secured claims" described in § 1325(a)(5). For lack of a better reference, it is called the "hanging paragraph."

secured lender with a lien on her vehicle. Debtor made eight of the required 48 payments. She then filed a chapter 13 petition and Plan on January 13, 2006.

Debtor used the chapter 13 Form Plan ("Form Plan") recommended by this district's Chapter 13 trustees to propose her Plan. Pursuant to § 506(a), her Plan bifurcates MFCU's claim into a secured and unsecured portion and puts the secured portion of that claim in paragraph 5 of the Form Plan. She proposes paying the $5,225 secured portion of the claim in full with interest. The balance of the claim is treated in paragraph 13 as a general unsecured claim and paragraph 13 claimants will receive 0% on their claims.

The Form Plan has been recently amended by the Chapter 13 trustees to include a new paragraph 6 for other "specified secured claims." This paragraph was added in response to § 306(b) of BAPCPA, which added the hanging paragraph to § 1325(a).[2] Specifically, ¶ 6 of the Form Plan provides:

> **6. Specified Secured Claims, Personal Property (§ 506 valuation not applicable)(purchase money security interest in vehicles purchased for personal use within 910 days of filing the petition or other secured debt within one year of filing the petition).** Creditors named in this paragraph shall be paid in the same priority as creditors listed in paragraph 5 above but in full for allowed claims secured solely by personal property for which § 506 valuation is not applicable . . . .

(Emphasis in original.) Therefore, the Form Plan states that the valuation mechanism in § 506(a) shall not apply to purchase money security interests in a vehicle purchased within 910 days of the petition date (2 and 1/2 years), or other secured debts incurred within one year of the petition date. These claims must be treated as fully secured and paid in full with interest.[3]

MFCU objected to the Plan, contending its secured claim cannot be bifurcated and crammed down because its claim belongs in paragraph 6.

## III.

### ANALYSIS

■ The issue before this Court is whether MFCU's non-purchase money personal property secured claim should be classified in paragraph 6 as a fully secured claim pursuant to the hanging paragraph in § 1325(a). The hanging paragraph refers back to § 1325(a)(5) and provides:

> For purposes of paragraph (5) [allowed secured claims], section 506(a) shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day(**) preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor, *or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.*

(Emphasis added.)

MFCU believes the plain language of the statute has two distinct parts. The first part protects claims secured by a

---

**2.** Pub.L. No. 109–8, § 306(b) (2005).

**3.** There is a split of authority as to what the hanging paragraph actually accomplishes. This Chapter 13 Trustees' Form Plan interprets the hanging paragraph to require these claims to be treated as fully secured and paid in full with interest.

"purchase money" security interest in a vehicle acquired for personal use from being bifurcated and crammed down if the debtor incurred the debt within 910 days of the petition date. The second part protects all other personal property security interests from being bifurcated and crammed down if the collateral has value and the debtor incurred the debt within one year of the petition date.

MFCU bases its interpretation on the omission of the phrase "purchase money" from the second part of the hanging paragraph. It contends the omission means Congress intended to protect all personal property security interests from abusive cram downs if they meet the specified criteria. It reasons that if Congress intended to exclude non-purchase money security interests from the protections of § 1325(a), it would have expressly said so in the amended statute.

MFCU believes the title to § 306 of BAPCPA confirms Congress' intent to protect all personal property security interests.[4] Specifically, Congress titled this section of BAPCPA: "Section 306—Giving Secured Creditors Fair Treatment in Chapter 13 ... Restoring the Foundation for Secured Credit."[5] MFCU argues the title's reference to "security interests," in general, confirms Congress intended to extend the cram down protection to all personal property security interests. It reasons that if Congress intended to protect only purchase money security interests, the title to that section would have said so.

 The revised Form Plan supports MFCU's interpretation. New paragraph 6 describes a new classification of personal property secured creditors as having purchase money security interests in a vehicle purchased within 910 days of filing the petition, "or other secured debt within one year of filing the petition." Form Plan at ¶ 6. However, the purpose of the Form Plan is to facilitate administration of chapter 13 cases filed in this district. The Form Plan cannot contradict or revise the substantive law. *In re Sunahara*, 326 B.R. 768, 783 (9th Cir. BAP 2005)(citing with approval *In re Sounakhene*, 249 B.R. 801 (Bankr.S.D.Cal.2000)).

To date there is no case law supporting MFCU's position. At least two of the leading BAPCPA bankruptcy treatises agree the hanging paragraph protects only purchase money security interests. Specifically, *Collier* provides:

> The claims encompassed in this language at the end of section 1325 [the hanging paragraph] are two types of purchase money security interests. The first type is a purchase money security interest [in a personal use vehicle] ....
>
> *The second type is a purchase money security interest for a debt incurred within one year preceding the filing of the petition, if the collateral consists of any other thing of value.*

8 L. King, *Collier On Bankruptcy*, ¶ 1325.06[1][a] at 1325–28 (15th ed. Rev.2006)(emphasis added). Likewise, Hon. William Houston Brown and Lawrence Ahern III describe the hanging paragraph as follows:

> Section 1325(a) is further amended to add at the end a provision that § 506 does not apply in determining a secured claim, for purposes of § 1325(a)(5), if the creditor has a purchase-money security interest in a motor vehicle purchased by the debtor for the debtor's personal use within 910 days before the filing of the bankruptcy *or if the debtor has pur-*

---

**4.** *This section of BAPCPA added the hanging paragraph to § 1325(a).*

**5.** Pub.L. No. 109–8, § 306 and § 306(b) (2005).

*chased other purchase-money collateral within one year of the filing.*

Hon. William H. Brown and Lawrence Ahern, III, *2005 Bankr.Reform Legis. with Analysis 2dD* § 6:35 (Updated Feb. 2006) (emphasis added).

The dicta in at least two bankruptcy cases is in accord. *In re Horn,* 338 B.R. 110, n. 3 (Bankr.M.D.Ala.2006); *In re Johnson,* 337 B.R. 269, 272–73 (Bankr. M.D.N.C.2006). In *Horn,* the creditor claimed it was entitled to cram down protection under amended § 1325(a) because it had a purchase money security interest in a vehicle. *Horn,* 338 B.R. at 112. The court found the creditor did not have a purchase money security interest under applicable state law so it was not entitled to cram down protection under the first part of the statute. *Id.* at 113–14. Further, in footnote 3, the court explained it did not need to consider the second subpart of the statute since the creditor did not have a purchase money security interest.

In *Johnson,* the creditor had a purchase money security interest in a vehicle purchased within 910 days of the petition date. Debtors argued that the creditor was not entitled to cram down protection under § 1325(a)(9) because the creditor was secured by more than the vehicle. *Johnson,* 337 B.R. at 272.[6] The Court rejected the debtors' argument because it found § 1325(a)(9) also applies to other collateral "purchased" within one year before bankruptcy. *Johnson* at 273. Accordingly, the dicta in these cases limits the hanging paragraph to purchase money security interests.

MFCU asks the Court to disregard all non-binding legal authorities. However,

the Court is persuaded these authorities are correct. It does not agree with MFCU's premise that the language in the hanging paragraph is clear and unambiguous in its protection of all security interests. While the statute could be read to give this effect, it could also be read to protect only purchase money security interests. Thus, the statute could be construed as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt ... or if collateral for that [purchase money] debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.

This alternate construction is not literal but it is probably what Congress intended.

■ In ruling, the Court recognizes it must implement the language of the statute and not what it thinks Congress might have intended instead. *Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). However, the Court cannot implement the language of the statute where (as here) the plain meaning is ambiguous.

Other courts have struggled to make sense of the hanging paragraph. They are split concerning the effect of the statute's directive that "section 506(a) shall not apply," and its interplay with § 1325(a)(5). *See e.g. In re Montoya,* 341 B.R. 41, 44 (Bankr.D.Utah 2006)(holding the directive that "section 506(a) shall not apply" merely precludes a debtor from using the valuation mechanism of § 506(a) to bifurcate a secured creditor's claim into a secured and unsecured claim); *but see In re Carver,* 338 B.R. 521, 526–27

---

6. The court cites to § 1325(a)(9) because some bankruptcy code publications tagged it

to the end of this subsection.

(Bankr.S.D.Ga.2006)(holding that this directive means these claims are neither an unsecured claim nor an allowed secured claim for purposes of § 1325(a)(5) because § 506(a) is the Code's sole mechanism to obtain an allowed secured claim). The differing opinions confirm the hanging paragraph is ambiguous. *In re Doser*, 412 F.3d 1056, 1062 (9th Cir.2005)(when men of common intelligence must necessarily guess at a statute's meaning and differ as to its application, a statute is ambiguous).[7]

■ When a statute is ambiguous, a court's next step is to review the legislative history for guidance. The legislative history that accompanied the enactment of BAPCPA is scant. It reflects that § 306 is part of a series of amendments intended to discourage bankruptcy abuse. H.R.Rep. No. 109–31, 109th Cong., 1st Sess., Title III, page 69, 2005 WL 832198, page *137 (1995)(the "BAPCPA Legislative History"). The section-by-section analysis in this legislative history provides that § 306(b) adds an amendment at the end of § 1325(a) of the Bankruptcy Code. Then it recites the text of the amendment without further explanation. *Id.* at 72, *140. The BAPCPA Legislative History is not enlightening as to what Congress intended.

Accordingly, the Court is left to speculate as to what Congress intended by the hanging paragraph. The history leading to the enactment of BAPCPA spans nearly eight years from the date the bankruptcy reform legislation was first introduced. *Id.* at 6, *92. Tracing the eight year history of this particular amendment is torturous.

Congress first introduced the amendment in 1997 as part of the Responsible Borrower Protection Bankruptcy Act. This version of the amendment added a new subsection (e) to § 506 which provided: "subsection (a) shall not apply to an allowed claim to the extent attributable in whole or in part to the purchase price of personal property acquired by the debtor within 180 days of the filing of the petition ..." Further, it specified that if the purchase price is secured only by the personal property, the collateral value and the amount of the allowed secured claim shall be the amount of the unpaid purchase price, plus interest and other charges at the contract rate. Responsible Borrower Protection Bankruptcy Act, H.R. 2500, 105th Cong., 1st Sess., § 110, page 11 (1997).

The 1997 Senate Bill differed from the 1997 House Bill in that it shortened the 180–day reach back period in § 506 to a 90–day period. Further, it did not specify that the collateral value shall be the amount of the unpaid purchase price, plus interest and other charges at the contract rate. Finally, the Senate Bill also added a "hanging" paragraph to the end of § 1325(a) which specified that: "[f]or the purposes of paragraph (5) [allowed secured claims], section 506 shall not apply to a claim described in that paragraph." Consumer Bankruptcy Reform Act of 1997, S.1301, 105th Cong., 2nd Sess., § 302(a)(2) and (c), page 34 (1998).[8] In 1998, the House passed a version of the amendment which mirrored the 1997 Senate Bill. Consumer Bankruptcy Reform Act of 1998, H.R. 3150, 105th Cong., 2nd Sess., § 302(a)(2) and (c), page 20–21 (1998).

---

**7.** Further, the hanging paragraph contains an obvious typographical error depicted by the [**] in the Bankruptcy Code's text; it has no internal sub-structure; and Congress did not bother to name it. It is difficult to presume

Congress said precisely what it intended to say when the statute is so poorly written.

**8.** This bill was first introduced into the Senate on October 21, 1997.

In 1999, the House and the Senate introduced different versions of the amendment. The House Bill mirrored its 1997 version except that it provided a 5–year reach back period instead of 180 days. Bankruptcy Reform Act of 1999, H.R. 833, 106th Cong., 1st Sess., § 122, page 26 (1999). The Senate Bill version eliminated the § 506 provision, and it morphed the "hanging" paragraph into its present form except the present 910–day reach back period was a five-year period, and the present one-year reach back period was a six month period. Bankruptcy Reform Act of 1999, S. 625, 106th Cong., 1st Sess., § 306(b), page 40 (1999).

Thereafter, in 2000, 2001 and 2003, Congress continued to propose and pass bankruptcy reform legislation. Each version included the "hanging" paragraph in its present form except they differed in the proposed reach back periods. Bankruptcy Reform Act of 2000, S. 3186 and H.R. Rep. 106–970, 106th Cong., 2nd Sess., § 306(b), page 54 (2000)(providing a five-year and a one-year reach back period); Bankruptcy Reform Act of 2001, S. 420 and H.R. 333, 107th Cong., 1st Sess., § 306(b), page 57 and page 55 (2001)(providing a three-year and a one-year reach back period); Bankruptcy Abuse Prevention and Consumer Protection Act of 2003, H.R. 975, 108th Cong., 1st Sess., § 306(b), page 60 (2003)(providing a 910–day and a one-year reach back period).

In tracing the history of this amendment, it appears Congress continuously regarded it as protecting purchase money security interests. The legislative history accompanying the Bankruptcy Reform Act of 1998 explains the effect of the amendment as follows:

> Section 128 creates an exception to the valuation standards of section 506 of the Bankruptcy Code with regard to personal property *purchased* by the debtor on secured credit within 180 days preceding the filing of his or her bankruptcy case. This provision addresses the following problem. Under present law, a debtor, for instance, can finance the *purchase* of an automobile with a showroom value of $20,000 by giving the lender a security interest in the vehicle. If the debtor then files for bankruptcy relief one day later, then the value of the secured creditor's lien must be determined under section 506 of the Bankruptcy Code. Even though the vehicle is one day old, the amount of the secured creditor's claim is, under current law, limited to the value of the automobile taking into account the immediate affect of depreciation upon purchase. Accordingly, that secured creditor has an allowed secured claim in a reduced amount based upon the value of a used automobile and an allowed unsecured claim for the difference between the present value of the automobile and the amount owed to the secured creditor.
>
> Section 128 protects against this abuse [cram down abuse] by *providing that if the claim is secured only by personal property acquired by the debtor* within 180 days prior to filing for bankruptcy relief, then the value of the property as well as the allowed amount of the secured claim is the sum of the unpaid principal balance and the amount of accrued and unpaid interest and charges at the contract rate . . . .

H.R. Rep. 105–540, 105th Cong., 2nd Sess., page 109, 1998 WL 254742,*84–85 (1998)(emphasis added). The legislative history accompanying the Bankruptcy Reform Act of 1999 is in accord. H.R. Rep. 106–123(I), 106th Cong., 1st Sess., page 168, 1999 WL 306442, *128 (1999).[9]

---

9. The 1999 Legislative History provides:

Section 122. Restraining abusive pur-

Even though the 1999 Senate Bill (S.625) deleted the § 506 provision, the legislative history confirms Congress still intended the amendment to protect purchase money security interests. The legislative history to S. 625 describes the major differences between S. 625 and the prior bills passed by both the House and the Senate (S. 1301 and H.R. 3150). It does not provide that S. 625 expands the chapter 13 cram down protection to include non-purchase money security interests. S. Rep. 106–49, 106th Cong., 1st Sess., pages 12–13 and 29, 1999 WL 300934, pages *13–14 and *29 (1999). Moreover, the legislative history accompanying the 2000 amendment provides:

> Section 306. Giving secured creditors fair treatment in chapter 13[.]
> This provision changes the relationship of secured creditors and debtors in certain situations arising in chapter 13 proceedings . . . .
> *[T]he extent to which claims secured by purchase money security interests in personal property are subject to cramdown to fair market value is limited. It is intended that cramdown not apply to any collateral described in this provision during the periods of time specified,* and that the amount of the claim which must be paid under the plan be the full amount of the claim allowed under section 502 without application of section 506. Thus, if the debt was incurred within 5 years prior to filing and

the collateral consists of a motor vehicle acquired for the personal use of the debtor, the value of the collateral cannot be reduced to the current fair market value and therefore the amount the plan must pay under section 1325(5)(B)(ii) over the duration of the plan must be the amount of the allowed claim under section 502 rather than the allowed secured claim under section 506. A similar result applies for any other personal property if the debt was incurred during the one year period preceding the filing.

146 Cong. Rec. S11683–02, pages 84–85, 2000 WL 1796598, *S11709 (Dec. 7, 2000)(emphasis added). The 2000 legislative history confirms that, notwithstanding the deletion of the provision in § 506, Congress intended to *protect purchase money security interests.*

Based upon the eight-year history of this amendment, the Court holds the hanging paragraph protects only purchase money security interests. The hanging paragraph provides a longer 910–day period of protection for purchase money security interests in a vehicle. All other personal property purchase money security interests receive a shorter 1–year period of protection if the collateral has value.

The Court's holding is consistent with the equities of this case. This is not a situation where Debtor purchased a new car on a secured credit basis shortly before bankruptcy. Unlike the factual scenario in

---

chases on secured credit[.]
*This provision addresses the following problem.* Under present law, a debtor, for instance, can finance the purchase of a new automobile with a showroom value of $20,000 by giving the lender a security interest in the vehicle. If the debtor then files for bankruptcy relief one day later, then the value of the secured creditor's lien must be determined under section 506 of the Bankruptcy Code. Even though the vehicle is one day old, the amount of the secured credi-

tor's claim is, under current law, limited to the value of the automobile taking into account the immediate effect of depreciation upon purchase . . . .
Section 122 of the bill prevents the bifurcation of a secured claim in an individual chapter 7, 11, 12, or 13 case *to the extent the claim is attributable in whole or in part to the purchase price of personal property acquired by the debtor within the five-year period preceding the bankruptcy filing . . . .*
*Id.* at page 168, *128 (emphasis added).

the legislative history, Debtor already owned the vehicle. She obtained a loan from MFCU secured by her six year old car which had already significantly depreciated in value. Presumably, MFCU considered the depreciated value of the collateral and Debtor's credit history in making its decision to extend her secured credit. Debtor's subsequent inability to pay her debts and her decision to reorganize her finances through a chapter 13 plan is not an abuse of the bankruptcy system. Accordingly, MFCU's objection is overruled and the Plan is confirmed as stipulated.

## IV.

### CONCLUSION

The hanging paragraph is poorly written and ambiguous as to what it means. The BAPCPA Legislative History is not enlightening as to what Congress intended the amendment to mean. The Court has reviewed the history of the bankruptcy reform legislation leading to the enactment of BAPCPA. It concludes the Congressional intent for the cram down amendment never changed even though the statute underwent many revisions over the eight years the legislation was pending. Congress intended the cram down amendment to protect creditors with purchase money security interests. The Court finds nothing to persuade it that Congress intended to expand this protection to non-purchase money security interests in 1999 when it deleted the amendment from § 506 and morphed it into BAPCPA's hanging paragraph.

Accordingly, the Court adopts the alternate construction of the hanging paragraph. It construes the paragraph to provide a longer 910–day period of protection for purchase money security interests in a vehicle. All other personal property purchase money security interests receive a

shorter 1–year period of protection if the collateral has value.

MFCU's objection to the Plan is overruled because it does not have a purchase money security interest. The Plan will be confirmed as the parties have stipulated. Debtor is directed to prepare and lodge an order in accordance with this Memorandum Decision within ten days of the date of its entry.